THE STATE OF NEW JERSEY, EX REL., WM. ECKELMANN, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. HAROLD J. JONES, DEFENDANT-RESPONDENT.

Argued February 27, 1950—Decided March 27, 1950.

Reargument denied.   See 72 *A.* 2d 872.

*Mr. William V. Breslin* argued the cause for the appellant.

*Mr. James A. Major* argued the cause for the respondent (*Mr. Joseph H. Gaudielle,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J.   This is an appeal from a judgment of the Superior Court, Law Division, dismissing an information in the nature of a writ of *quo warranto.*   The appeal was taken to the Appellate Division and was certified by this Court on its own motion.

The plaintiff challenges the right of the defendant to hold office as a patrolman in the police department of Ridgefield Park, a village governed by the provisions of the Walsh Act (*R. S.* 40:70–1 *et seq.*) but which had never adopted the Civil Service Act (*R. S.* 11:19–1 *et seq.*). In 1939 the village passed an ordinance regulating its police department, the pertinent portions of which are:

"2. The Police Department of the Village of Ridgefield Park (hereinafter referred to as the Department), shall consist of the following:
* * *

"(d) Such number of patrolmen as the Director may deem necessary * * *

"(i) A Reserve Force subject to the provisions of Section 7 hereof. * * *

"7. Reserve Force

"(a) The Director may establish a Reserve Force by appointing Reserve Policemen or Policewomen in such number as he may determine, not exceeding in number the number of members on the permanent force. Members of the Reserve Force shall not be considered as members of the permanent force and shall not share in or become members of the Police Pension Fund.

"(b) Such appointment as a member of the Reserve Force may be terminated by the Director at any time without cause or hearing.
* * *

"(d) The Director may detail for special service, whenever in his opinion it shall be necessary, as many Reserve Policemen or Policewomen as he shall deem necessary. For the duration of such special service the Reserve Policemen or Policewomen so designated shall be constituted and vested with the authority of special officers of the Village of Ridgefield Park, as provided in Section 40:47–19 of the Revised Statutes of 1937, its amendments and supplements. While performing special service members of the Reserve Force shall have the powers and duties of patrolmen of the Department and shall be subject to the Departmental rules.

"(e) Reserve Policemen or Policewomen while on special service, shall be paid on a *per diem* basis at the same rate as a patrolman in the Department in the first year of service. * * *

"30. All appointments to and promotions in the Department shall be made by the Director on written notice to the Chief of Police and the Village Clerk. * * *"

Sometime between June 5th and 8th, 1944, the Mayor of Ridgefield Park and its Director of the Department of Public Safety, in the presence of the Chief of Police, stated orally to the defendant, "You are engaged as a policeman, as a

patrolman, in the Police Department of the Village of Ridge-field Park, effective June 16, 1944." On that day the defendant was issued a uniform and other policemen's gear, took the oath of office of a patrolman, was assigned a foot patrol beat, and went on duty at 7 P. M. At about 8 P. M. he was instructed by the sergeant to report to the police station, which he did, and he was there referred to the Village Clerk. The defendant was asked to and voluntarily did sign a letter of appointment, though only after he called the Village Clerk's attention to the fact that he was supposed to be a regular and not a special policeman and was assured by the Village Clerk that this was a mere matter of form. This letter, on file in the records of the Village, is as follows:

"To: Harold J. Jones

"You are hereby appointed as a special policeman, as prescribed by Revised Statutes of New Jersey, 40:47–19.

"Your duties shall include such police duties as may be directed and prescribed by the Chief of Police of the Village of Ridgefield Park.

"It is an express condition of your employment that you are not, or by virtue of your employment are you to become, a member of the Police Department of the Village of Ridgefield Park, and you have and will have no rights, claims or interest therein or to any of the benefits, pensions or other rights to which members of the Police Department are entitled under an ordinance of the Village entitled 'An Ordinance to Reorganize, Establish, Maintain, Regulate and Control a Police Department in the Village of Ridgefield Park and to provide Rules and Regulations for the Government and Control Thereof,' adopted March 14, 1939, or the laws of the State of New Jersey.

"You are to receive compensation at the rate of $150.00 per month, payable semi-monthly.

"Your services may be terminated by the Director of the Department of Public Safety and Finance at any time, without notice and without cause or hearing.

"Dated June 16th, 1944.

"H. I. Lowe
"Director of the Department
"of Public Safety and Finance

"I hereby accept the foregoing employment, subject to the terms and conditions as set forth above, which I have read and understand.

"Dated June 16th, 1944.                              Harold J. Jones

"Witness:

"Joseph E. Gorman."

The official minutes of the Board of Commissioners for June 27, 1944, show the Mayor's appointment of the defendant:

"Special Reports  *  *  *.

"Mayor Lowe reported that Harold J. Jones had been appointed as Special Patrolman; that this is a temporary appointment and can be terminated at any time in accordance with the ordinance."

The official payroll of the police department for the period from June 16th to June 30th, 1944, listed the defendant as a special patrolman and showed that no pension deduction was made from his pay. It is significant to note here that the form of defendant's appointment and his payroll status was the same as that of Special Patrolman Boercherer, who was appointed as such in 1942 and was not dropped from the force until after April, 1947, when men in military service came back to their work.

The defendant continued to perform his duties and was carried on the payroll as a special patrolman for almost three years, until April, 1947. In that month Mayor Lowe, who was still Director of the Department of Public Safety, appointed the defendant as a permanent member of the police force, retroactive to June 16, 1944. Prior to this appointment defendant had taken a competitive examination for patrolman and rated No. 1. Defendant's appointment is evidenced by the following extract from the minutes of the Board of Commissioners for April 8, 1947:

"Communications  *  *  *

"1. From Mayor Lowe advising of the appointment of Harold J. Jones as a permanent member of the Ridgefield Park Police Department with rank of patrolman, such appointment to be retroactive to June 16, 1944, the date he originally joined the Department. Communication ordered filed for record."

The defendant was thereafter carried on the payroll as a patrolman and pension deductions were made from his pay. In the pretrial order it was admitted that the defendant is not a

veteran and that at the time of this appointment he was 33 years of age.

All of these facts, except those shown by the official records of the village or admitted in the pretrial order, were introduced in evidence by the testimony of the defendant, Mayor Lowe, the Chief of Police, and the Village Clerk, over the objection of the plaintiff.

The plaintiff commenced this action by filing an information in June, 1948, alleging that the defendant's appointment as a patrolman was illegal and void, in that he was 33 years old at the time and not a veteran, whereas *R. S.* 40:47–4 prohibits the appointment of a person over the age of 30 to the police force of any municipality unless he be a veteran. The defendant denied the allegations of the information and alleged that he was lawfully appointed as a patrolman on or about June 16, 1944. At the close of the case the trial court denied the plaintiff's motion for a directed verdict and subsequently filed an opinion finding that the defendant had been regularly and legally appointed a patrolman between June 5th and 8th, 1944. Thereupon judgment was entered dismissing the proceedings. From this judgment the plaintiff appeals.

The judgment below should be affirmed if the defendant was legally appointed to the police force either in 1944 or in 1947. To determine the nature and validity of the 1944 appointment the question must first be answered as to whether or not oral testimony is admissible for the purpose. The village ordinance required appointments to be in writing, a letter of appointment was filed by the appointing power and acknowledged in writing by the defendant, the minutes of the Board of Commissioners include a report by the appointing power as to the nature of the appointment, and the payroll record also indicates the defendant's status. This is the evidence relied upon by the plaintiff, who argues that oral testimony is not admissible to alter, modify or contradict the official municipal records. It is difficult to see how this argument can be refuted. It was so held in *Campbell v. Hackensack,* 115 *N. J. L.* 209 (*E. & A.* 1935), where the court said:

"The soundness of the legal principal that parol evidence cannot be invoked to alter or supplement the written record of a municipality does not seem to admit of serious dispute. * * * Viewed from any aspect, the doctrine that the official minutes of a municipal body may be altered or supplemented by parol evidence seems to be a dangerous one and capable of introducing havoc and instability into the conduct of the business of a municipality."

The dangers are evident in the instant case if the defendant be permitted to explain away his own signed statement and if the Mayor-Director be permitted three years after making a written appointment, the nature of which he reported at the time to the Board of Commissioners and swore to in preparing the payroll, to assert that its nature was otherwise.

■ With all oral testimony as to the nature of the 1944 appointment eliminated, it is next necessary to determine the nature of that appointment by the available municipal records. From these records there can be no doubt that the position was temporary and that defendant was not to be considered a regular member of the force. The fact that the term "special patrolman," used to designate the defendant's position, is not to be found in the ordinance and the fact that the term of the appointment was not limited to one year as required by *R. S.* 40:47–19 (factors relied upon heavily by the trial court) would not seem to strengthen the defendant's case. The defendant can prevail only by a showing that he was permanently appointed, not by a showing that a temporary appointment was improper. It is obvious from the records of the municipality that a temporary and not a permanent appointment was intended and that the defendant did not become a permanent member of the police force by any appointment in 1944.

■ Was the defendant legally appointed to the police force in 1947? He does not even argue that an appointment may be made retroactive, so we need not here consider that aspect of the question. By statute passed in 1945, *R. S.* 40:47–4 was amended so as to prevent the appointment of policemen over the age of 30 years. On April 8, 1947, the date of the attempted appointment, the defendant was admittedly 33 years of age and ineligible—a fact which may explain the

attempt to make the appointment retroactive to June, 1944. The defendant argues that this statute is not applicable as he was already a member of the police force and thus within the exemption in the act. But this exemption by its express terms applies only to persons permanently employed:

"Nothing herein contained shall be construed to prohibit the continuance in office or employment of any person who is *permanently* employed by the municipality. * * *" (Italics added.)

and we have already held that the defendant was not a permanent member of the police department.

The defendant's next contention, to escape the operation of this statute, is that it is unconstitutional as by its terms it is subject to another statute that permits a veteran to deduct five years from his age. Whatever the merits of this attack on the constitutionality of *R. S.* 40:47–4 may be, they need not be resolved here. There is nothing in the record even to hint that this argument was raised at either the pretrial conference or the trial and, this being so, the defendant should not be permitted to raise it on appeal.

We should note in passing that the delay of a year in bringing this case on for trial would not be justified under the new rules for proceedings in lieu of prerogative writs. *Rule* 3:81–6 provides that such proceedings "may be advanced for hearing, trial and disposition by the court" and the public interest in such cases requires that this be done save in the most unusual circumstances.

The judgment below is reversed and judgment is entered in favor of the plaintiff in accordance with *Rule* 1:4–9.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT and BURLING—5.

*For affirmance*—Justice WACHENFELD—1.