214 N.J. Super. 503 (1986)
520 A.2d 418
CAROL JULIANO, PLAINTIFF,
v.
BOROUGH OF OCEAN GATE; WILLIS JONES, INDIVIDUALLY AND AS MAYOR, WALTER ALONZO, CARL BACH, MURIEL DEAN, DWAYNE MEASE, WALTER REITER & JOSEPH REINA, INDIVIDUALLY AND AS MEMBERS OF THE COUNCIL OF THE BOROUGH OF OCEAN GATE, DEFENDANT,
v.
THOMAS M. BARCELLONA, DEFENDANT-INTERVENOR.
Superior Court of New Jersey, Law Division Ocean County.
Decided October 17, 1986.
*505 Robert Rosenberg for plaintiff.
Robert A. Gasser for defendants. (Gasser & Dochney, attorneys).
Daniel J. Carluccio for defendant-intervenor (Carluccio & Liston, attorneys).
SERPENTELLI, A.J.S.C.
Plaintiff seeks to invalidate appointment of defendant-intervenor Barcellona as chief of police in Ocean Gate asserting a right to be appointed to that position pursuant to N.J.S.A. 40A:14-129. Involved in the litigation are numerous novel legal issues including the validity of plaintiff's appointment to the police department because she was beyond the age of 35 at that time; the validity of the maximum age limitation for police officers established by N.J.S.A. 40A:14-127; the claim that the municipality is estopped from asserting that plaintiff exceeded that maximum age when the municipality first appointed her and the municipality's claim that even if it is required by N.J.S.A. 40A:14-129 to promote police officers from within its department, the statute is inapplicable to appointment of a chief of police. Other issues depend upon factual determinations and are not appropriate subjects for the motions for summary judgment now before the court. Included in that category are defendants' claims that plaintiff did not want to be considered for appointment and that, in any event, she is not qualified for the job.
*506 It is uncontested that plaintiff was appointed in some temporary capacity with the police department on August 6, 1973. On March 16, 1974 she took an oath as "Police Matron." She was thereafter appointed "Special Police Officer" on January 1, 1976 and again on January 1, 1977. The parties agree plaintiff remained as a special police officer until March 14, 1978. On that date she signed an oath as a "Regular Police Officer." Since that date she has served continuously, moving through the ranks to the position of sergeant, and on February 26, 1985 she was appointed "Acting Police Chief." She remained acting chief until the borough appointed defendant Barcellona chief of police on April 22, 1986.
The first issue to be resolved is whether plaintiff's appointment as a regular police officer violated N.J.S.A. 40A:14-127. That statute provides, in part:
Except as otherwise herein provided, no person shall be appointed as a member or officer of the police department or force in any municipality who is under 21 or over 35 years of age.
It is admitted that plaintiff was almost 39-years-old at the time she took the oath as a regular police officer on March 14, 1978. Plaintiff argues that she was a police officer since her initial appointment as a temporary officer on August 6, 1973. To avoid application of the 35-year maximum age, plaintiff seeks to tack on her service in various temporary positions within the police department which occurred before she was 35-years-old. N.J.S.A. 40A:14-146, which was in effect at the time of plaintiff's appointment as a regular police officer, is dispositive. It expressly provides that special law officers "shall not be members of the police force."[1] The evident intent is to create a different category of employee which would augment the police force, limit the powers of special officers and restrict their *507 appointment to a one-year term. Our Supreme Court has held that such employment is temporary and does not qualify as permanent employment within the meaning of the predecessor of N.J.S.A. 40A:14-127. State ex rel. Eckelmann v. Jones, 4 N.J. 207, 213-14 (1950).
Thus, the court is called upon to address the problems created by plaintiff's appointment as a regular police officer when she was beyond age 35. While plaintiff urges the court to invalidate the age-35 restriction, that issue should not be decided absent notice to the Attorney General pursuant to Rule 4:28-4. Furthermore, the court need not decide that question until it has determined whether the borough is estopped from asserting that the plaintiff's appointment as a regular police officer is void ab initio because of her age at appointment. It is to that question I now turn.
The principle of estoppel is designed to prevent a party from disavowing prior conduct if such repudiation would violate justice and conscience and thereby prejudice others. West Jersey Title Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958). It must be acknowledged that our courts have been more hesitant to apply the doctrine of estoppel against municipal corporations than against private parties. Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954). That approach is justified since matters of public interest and legislative will should not be easily compromised by freely applying the doctrine of estoppel to irregular municipal conduct. However, our Supreme Court has recognized and approved of the growing trend towards the application of equitable principles of estoppel against public entities where the interest of justice, morality and common fairness require that course. Gruber v. Mayor and Township Committee of Raritan Tp., 39 N.J. 1, 13 (1962); Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 131 (1965).
In 405 Monroe Co. v. Asbury Park, 40 N.J. 457 (1963), Chief Justice Weintraub framed the circumstances under which it is *508 appropriate to invoke the concept of estoppel against municipalities:
In broad terms, it may be said that where a contract is beyond the power of the municipality or where the Legislature has explicitly barred any liability if a restriction upon the exercise of power is not met, relief ordinarily will be denied. [citations omitted] But if the difficulty is an irregularity in the exercise of a power the municipality does have and the Legislature had not decreed the consequences of the irregularity, our cases seek a just result. [at 463]
The case of Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493 (1955) more specifically delineates the instances when estoppel may be invoked. In that case, defendant sold public lands pursuant to statutory authority giving municipalities the right to dispose of unneeded property. Plaintiffs sought to void the sale because of noncompliance with statutory requirements relating to public notice and conditions of sale. The successful bidder had constructed a motel on the property before plaintiffs sued. The Court refused to set aside the sale notwithstanding the apparent irregularities. In so doing, it found a difference between acts which are primarily or secondarily ultra vires:
There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are ultra vires in the primary sense and void; the latter, ultra vires only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice. [at 504]
The Court emphasized that, although older case law generally held an ultra vires act was void ab initio and not subject to being validated by ratification or estoppel, the rights of innocent third parties dealing with municipalities had to be considered in order to serve the ends of justice or avoid a legal wrong. Id. at 505-506. The Court concluded that the power of sale was the municipality's essential jurisdiction and that deviation from the statutory provisions relating to that power should not vitiate the sale under the circumstances. In the case before the Court, the right of Ocean Gate to appoint police officers is not questioned. N.J.S.A. 40A:14-118. It exercised that essential power and therefore did not act ultra vires in the primary *509 sense. Its failure to abide by the age requirement is more accurately described as "an irregular exercise of a basic power" as opposed to "an act utterly beyond its jurisdiction." Summer Cottagers', supra. Consequently it is, at most, ultra vires in the secondary sense.
The Supreme Court took the same approach in the context of a dispute over the right of a county to modify previously granted pension rights. Skulski v. Nolan, 68 N.J. 179 (1975). The Court cited with approval the language of the Summer Cottagers' opinion quoted above. It acknowledged the right of government to reopen and modify pensions previously granted but added that "equitable considerations are relevant in evaluating the propriety of conduct taken after substantial reliance by those whose interests are affected by subsequent actions." Id. at 198. The Court concluded that it is appropriate to weigh equitable considerations to avoid unjust results in such a setting.
In the case before me, a weighing of the respective interests dictates the result. Plaintiff's employment should not be terminated because of the borough's failure to comply with the age restrictions. There is no suggestion that plaintiff's appointment in 1978 was procured through fraud. The quality of her work as a police officer has never been formally questioned although there is now a dispute as to whether she is qualified to be chief. There may be legitimate policy justifications for the age-35 limitation. If there are not, the validity of the statute may be in question. Cf. E.E.O.C. v. County of Allegheny, 705 F.2d 679 (3 Cir.1983); E.E.O.C. v. County of Los Angeles, 706 F.2d 1039 (9 Cir.1983), cert. den. 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984); Rodriguez v. Taylor, 428 F. Supp. 1118 (E.D.Pa. 1976), cert. den. 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); E.E.O.C. v. Missouri State Highway Patrol, 748 F.2d 447 (8 Cir.1984), cert. den. ___ U.S. ___, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). Even if there are legitimate justifications for restricting initial appointments to *510 persons not older than 35 years, how can it be said that the inadvertent violation of the age limit in this case would warrant terminating plaintiff's employment? Many police officers appointed in conformity with the statute are still performing satisfactorily even though they are well beyond age 35. Assuming the validity of the age limitation, no other policy or legislative purpose is threatened by disregarding the deviation under these unique circumstances.
Conversely, a finding that plaintiff's appointment is ultra vires in the primary sense and thus void would result in a gross injustice. The borough has not raised the issue in a timely fashion. Cf. State ex rel. Eckelmann v. Jones, supra. Plaintiff has established seniority and pension rights, she has limited her ability to pursue another career and would be barred from seeking employment as a police officer elsewhere.
Our Appellate Division recently arrived at a similar result in O'Malley v. Dept. of Energy, 212 N.J. Super. 114 (App.Div. 1986). The court concluded elemental fairness requires that employees may assume laws and regulations pertaining to their employment will be followed by their employers. Id. at 121. It is a disturbing prospect that a public employer could make an innocent mistake which could jeopardize an employee's job. In certain situations the employee might have to suffer the consequences. However, when the mistake is belatedly raised by the employer only in response to the employee's suit to enforce perceived employment rights, the mistake can be unforgivable and the employee should not suffer. Estoppel is a proper remedy.
I hold the borough may not assert that the appointment was defective. Thus, I do not reach the question of the validity of the maximum age limitation in N.J.S.A. 40A:14-127.
The borough also claims that N.J.S.A. 40A:14-129 is inapplicable to the appointment of a chief of police as opposed to promotion to other superior positions. Neither a reading of *511 the statute nor a search for the legislative intent supports defendant's position.
The statute provides:
In any municipality wherein Title 11 (Civil Service) of the Revised Statutes is not in effect, and except in cities of the first and second class, a promotion of any member or officer of the police department or force to a superior position shall be made from the membership of such department or force. Due consideration shall be given to the member or officer so proposed for the promotion, to the length and merit of his service and preference shall be given according to seniority in service.
No person shall be eligible for promotion to be a superior officer unless he shall have previously served as a patrolman in such department or force.
The obvious purpose of the statute is to reward good performance and inject merit into the promotion process in those municipalities not functioning under civil service regulations. In effect, the statute gives a protection similar to civil service procedures to guard employees against arbitrary action by the employer. In some way, the protection may be greater than that afforded in civil service communities. However, that does not justify undermining the legislative purpose by manufacturing a semantic difference between appointment and promotion.
In Miller v. Township of Wayne, 154 N.J.Super 247 (Law Div. 1977), the court addressed the purpose of the statute and relied upon legislative history in support of its finding that the police chief of Wayne must be appointed from the membership of the police force. The intention of the Legislature to require promotion from within is found in the plain language of the statute. The legislative statement appearing in the original Assembly Bill 166 (1927), the predecessor of N.J.S.A. 40A:14-129, vividly supports this conclusion:
The purpose of this act is to secure proper recognition of service and merit of police officers by preventing men from outside municipalities being appointed to superior positions over their heads and without regard to years of faithful service in their own department.
It has become the practice of men who have retired from one police department, receiving a pension therefrom, and receiving appointment to superior positions in other municipalities, thus having two sources of income and at the same time destroying the morale of the men who are, by faithful and efficient service, striving for promotion.

*512 It is to prevent such injustice that this bill is intended.
Arguably, the Miller case can be read more broadly to stand for the proposition that in a municipality governed by N.J.S.A. 40A:14-129, the appointing authority cannot "consider or designate or appoint a chief of police from without the membership" of the police department under any circumstances. Id. at 262. It is doubtful that the Legislature intended that result. However, that issue need not be reached until it is determined by plenary hearing that there is no one within the Ocean Gate Police Department who wants the job and is qualified for it. In the interim, it is clear that it is the obligation of the borough to make those determinations in a manner which cannot be deemed arbitrary, capricious or unreasonable. Gaskill v. Mayor & Comm'rs. of Avalon, 143 N.J. Super. 391 (Law Div. 1976), aff'd 149 N.J. Super. 364 (App.Div. 1977). Whether the borough has acted reasonably in passing over plaintiff must await a plenary hearing.
NOTES
[1] That statute subsequently became N.J.S.A. 40A:14-146.14 but in its amended form it still provided that special police officers "shall not be members of the police force." Plaintiff could not, therefore, benefit from a claim of retroactivity.