744 A.2d 649

MIDDLETOWN TOWNSHIP POLICEMEN'S BENEVOLENT ASSO-
CIATION LOCAL NO. 124, ON BEHALF OF ITS MEMBERS,
AND ALL PERSONS ENTITLED TO THE BENEFITS OF ITS
COLLECTIVE BARGAINING AGREEMENT WITH DEFEN-
DANT; AND IRVIN BEAVER, ON BEHALF OF HIMSELF AND
ALL OTHER PERSONS SIMILARLY SITUATED, PLAINTIFFS–
APPELLANTS, v. TOWNSHIP OF MIDDLETOWN, DEFEN-
DANT, AND LARRY S. LOIGMAN, INTERVENOR–RESPON-
DENT.

Argued January 3, 2000—Decided February 9, 2000.

362

*David J. DeFillippo* argued the cause for appellants (*Klatsky & Klatsky,* attorneys).

*Larry S. Loigman* argued the cause *pro se.*

The opinion of the Court was delivered by

GARIBALDI, J.

Plaintiffs, Irvin Beaver ("Beaver"), a retired Middletown Township police officer, and the Middletown Township Policemen's Benevolent Association Local No. 124 ("PBA"), appeal from an order for summary judgment in favor of Defendant, Middletown Township ("Township"), declaring Beaver was not entitled to medical benefits as a retired police officer of the Township. The specific issue in this appeal is whether a municipality may be equitably estopped from terminating post-retirement health benefits of a former municipal employee where that employee has received (and relied on) those benefits for a period of years.

I.

The facts are not in dispute. The Township employed Beaver as a police officer from October 11, 1966 until November 1, 1988. Prior to his retirement in 1988, Beaver discussed with Township officials the continuation of free health insurance benefits for himself, his wife, and his two young children. Township officials repeatedly assured Beaver that he and his family would receive free health benefits upon his retirement.

The Township's assurances were consistent with Article XV of the collective bargaining agreement ("Agreement") between the PBA [1] and the Township, which obligated the Township to provide free health insurance coverage "to all employees who have retired." Under the Agreement, the free health benefits included "a health insurance plan ... of a quality and continuing series of benefits at least equal to those provided by the New Jersey State Health Benefits Program Blue Cross/Blue Shield," as well as

---

[1] Throughout Beaver's tenure as a police officer, the PBA served as the collective bargaining representative for the Township's police officers.

dental insurance, and a prescription drug plan. Beaver retired on November 1, 1988, and received free health benefits for his entire family for approximately ten years.

However, in January 1998 Intervenor–Respondent, Larry S. Loigman, Esq. ("Loigman"), filed a prerogative writ complaint, and in March 1998 filed an amended prerogative writ complaint, in the Chancery Division of the Monmouth County Superior Court against the Township. Loigman's action demanded that the Township's health insurance coverage be reviewed to remove any ineligible municipal or retired employees. Specifically, Loigman contended that Beaver received post-retirement health benefits contrary to *N.J.S.A.* 40A:10–23, which provided, in part, that "[r]etired [municipal] employees shall be required to pay for the entire cost of coverage for themselves and their dependents." *N.J.S.A.* 40A:10–23 (1988). However, the statute also stated that "[t]he employer may, in its discretion, assume the entire cost of such coverage and pay all of the premiums for employees *who have retired … after 25 years or more service with the employer.*" *N.J.S.A.* 40A:10–23 (1988)(emphasis added). According to Loigman, Beaver had not satisfied the statute's threshold requirement of 25 years of "actual service" to the employer, and therefore was not entitled to free post-retirement benefits.

As a result of Loigman's complaint, Edward Dunn, the Township's Assistant Administrator, sent Beaver a letter dated March 17, 1998 stating:

> At the direction of the Township Attorney, I must inform you that the Township is legally unable to continue your current enrollment in the Township health plan. Therefore, effective today, your name will be removed from the retiree health enrollment listing. I understand the Township attorney has been in contact with you concerning this matter.

> However, you can continue your health coverage for a period of up to 18 months under COBRA continuation coverage. You must pay a monthly premium for this coverage as outlined in the attached memo. Coverage under COBRA will be retroactive to this date so you can continue coverage without a lapse. You have 60 days to decide if you want to enroll.

On March 20, 1998, as a result of the termination of his benefits by the Township, Beaver paid $839 to temporarily continue coverage for his family under COBRA for thirty days.

On March 25, 1998, PBA and Beaver filed a verified complaint in the Chancery Division of the Monmouth County Superior Court asserting improper termination of post-retirement health benefits by the Township. Plaintiffs also moved for an Order to Show Cause seeking an injunction against the termination of Beaver's benefits. Relying on *Wolfersberger v. Borough of Point Pleasant Beach,* 305 *N.J.Super.* 446, 702 *A.*2d 1294 (App.Div.1996), *aff'd,* 152 *N.J.* 40, 702 *A.*2d 1284 (1997), the trial court dismissed the verified complaint, determining that Beaver was not entitled to continued post-retirement health benefits.

Simultaneously, in *Loigman v. Township of Middletown,* the trial court granted Loigman's motion for summary judgment finding that the Township had provided free health benefits to ineligible retirees, including Beaver. The PBA and Beaver then moved to amend the judgment dismissing their complaint or, in the alternative, for a stay pending appeal to the Appellate Division.[2] The trial court denied plaintiffs' motion to amend the judgment and their motion for a stay, but entered an order permitting the PBA and Beaver to intervene in the matter of *Loigman v. Township of Middletown.* The issue that remained in that action was whether Beaver was required to reimburse the Township for the benefits received since his retirement in 1988.

Plaintiffs then appealed the grant of summary judgment. Prior to deciding the appeal, the Appellate Division granted plaintiffs' motion for a stay of the termination of health benefits. In an unpublished decision, the Appellate Division panel affirmed the trial court's ruling essentially for the reasons expressed by the trial court. We granted plaintiffs' petition for certification, *see* 161 *N.J.* 334, 736 *A.*2d 526 (1999), and now reverse.

---

[2] From that point on, the Township declined to appear at any of the proceedings.

## II.

■ The sole issue in this case is whether the Township is equitably estopped from terminating Beaver's post-retirement medical benefits. Equitable estoppel may be invoked against a municipality "where interests of justice, morality and common fairness clearly dictate that course." *Gruber v. Mayor and Twp. Comm. of Twp. of Raritan,* 39 *N.J.* 1, 13, 186 *A.*2d 489 (1962). We have defined the doctrine of equitable estoppel as follows:

> The essential principle of the policy of estoppel here invoked is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct. An estoppel ... may arise by silence or omission where one is under a duty to speak or act. It has to do with the inducement of conduct to action or nonaction. One's act or acceptance may close his mouth to allege or prove the truth. The doing or forbearing to do an act induced by the conduct of another may work an estoppel to avoid wrong or injury ensuing from reasonable reliance upon such conduct. The repudiation of one's act done or position assumed is not permissible where that course would work injustice to another who, having the right to do so, has relied thereon.
>
> [*Summer Cottagers' Ass'n of Cape May v. City of Cape May,* 19 *N.J.* 493, 503–04, 117 *A.*2d 585 (1955) (citations omitted).]

■ Equitable estoppel is " 'rarely invoked against a governmental entity.' " *Wood v. Borough of Wildwood Crest,* 319 *N.J.Super.* 650, 656, 726 *A.*2d 310 (App.Div.1999) (quoting *County of Morris v. Fauver,* 153 *N.J.* 80, 104, 707 *A.*2d 958 (1998) (citations omitted)). However, equitable estoppel will be applied in the appropriate circumstances unless the application would " 'prejudice essential governmental functions.' " *Ibid.* (quoting *Vogt v. Borough of Belmar,* 14 *N.J.* 195, 205, 101 *A.*2d 849 (1954)).

■ Equitable considerations "are relevant in assessing governmental conduct" and impose a duty on the court to invoke estoppel when the occasion arises. *Ibid.* (citing *Skulski v. Nolan,* 68 *N.J.* 179, 198, 343 *A.*2d 721 (1975)). In *Skulski,* the Court concluded that "it [was] appropriate for [the Court] to weigh equitable considerations, particularly the reliance factor" in determining whether the termination of pensions previously granted by the Hudson County Pension Commission was appropriate. *Skulski,*

*supra,* 68 *N.J.* at 198–99, 343 *A.*2d 721. The Court found particularly relevant circumstances where pensioners "relied upon the pension award in declining to secure subsequent full-time employment either within or without the county, thereby foreclosing the opportunity to secure alternate pension benefits." *Id.* at 199, 343 *A.*2d 721.

In *Skulski,* we recognized that before an evaluation of the equitable considerations in applying equitable estoppel may take place, an examination of the nature of the governmental action is required. *Id.* at 198, 343 *A.*2d 721. If the action by the municipality is considered *ultra vires,* a court must consider whether the conduct is *ultra vires* in the primary sense, or *ultra vires* in the secondary sense:

> There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are *ultra vires* in the primary sense and void; the latter, *ultra vires* only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice.
>
> [*Ibid.* (quoting *Summer Cottagers' Ass'n of Cape May, supra,* 19 *N.J.* at 504, 117 *A.*2d 585).]

Actions that are *ultra vires* in the secondary sense will permit the application of estoppel. *Ibid; see also Summer Cottagers' Ass'n of Cape May, supra,* 19 *N.J.* at 506, 117 *A.*2d 585 (holding that "the power of sale was within the municipality's essential jurisdiction" even if municipality failed to serve proper public notice as required by statute); *Jantausch v. Borough of Verona,* 41 *N.J.Super.* 89, 94–95, 124 *A.*2d 14 (Law Div.1956), *aff'd,* 24 *N.J.* 326, 131 *A.*2d 881 (1957) (holding that good faith granting of building permit was within authority of municipal official even if official erroneously interpreted municipal ordinances); *Scardigli v. Borough of Haddonfield Zoning Bd. of Adjustment,* 300 *N.J.Super.* 314, 319–20, 692 *A.*2d 1012 (App.Div.1997) (holding that "municipality or any of its agencies may be estopped if the circumstances involve reliance on a good faith act of an administrative official, within the ambit of that official duty, which constitutes an erroneous and debatable interpretation of an ordinance."). Therefore, to

determine whether principles of equitable estoppel should be applied to resolve this appeal, we must consider whether the Township's extension of benefits to Beaver in 1988 was *ultra vires*, and if so, whether it was *ultra vires* in the primary or the secondary sense.

### III.

Prior to its amendment in 1995, *N.J.S.A.* 40A:10–23 permitted a State or municipal employer to pay health insurance benefits for employees with twenty-five years service to that employer. On November 1, 1988, the effective date of Beaver's retirement, *N.J.S.A.* 40A:10–23 provided:

Retired employees shall be required to pay for the entire cost of coverage for themselves and their dependents at rates which are deemed to be adequate to cover the benefits. . . .

The employer may, in its discretion, assume the entire cost of such coverage and pay all of the premiums for employees who have retired on a disability pension or *after 25 years or more service with the employer,* or have retired and reached the age of 62 or older with at least 15 years of service with the employer, including the premiums on their dependents, if any, under uniform conditions as the governing body of the local unit shall prescribe.

[*N.J.S.A.* 40A:10–23 (1988)(emphasis added).]

For the purposes of this section, "employer" was defined as "the State of New Jersey, the county, municipality or political subdivision thereof which pays the particular policeman or fireman," *see N.J.S.A.* 43:16A–1(6) (1988), and "service" was defined as "service as a policeman or fireman paid for by an employer," *see N.J.S.A.* 43:16A–1(7) (1988).

On June 26, 1995, the Legislature amended *N.J.S.A.* 40A:10–23 to "broaden[ ] the categories of employees for whom municipalities and counties may choose to assume the entire cost of providing health and hospital benefit coverage after the employee's retirement." *Assembly Local Government Committee Statement to Assembly Bill No. 2588* (March 27, 1995). Specifically, the amendment to *N.J.S.A.* 40A:10–23 deleted the language "25 years or more service with the employer," and replaced it with "25 years or more of service credit in a State or locally administered

retirement system and a period of service of up to 25 years with the employer at the time of retirement, such period of service to be determined by the employer and set forth in an ordinance or resolution as appropriate." The legislative history of the amendment confirms that the amendment was intended to "include employees who have aggregated sufficient service credits in one or more State or locally administered retirement systems." *Id.*

In 1988, the Police and Firemen's Retirement System permitted eligible retirees to qualify for "special retirement" with twenty-five years of creditable service. *N.J.S.A.* 43:16A–11.1 (1988). "Creditable service" was defined as "service rendered for which credit is allowed as provided under section 4[3] of this act." *N.J.S.A.* 43:16A–1(8) (1988). Special retirement entitled an employee to pension benefits as described in *N.J.S.A.* 43:16A–11.1. If an employee had not completed twenty-five years of employment, yet sought special retirement, he or she could purchase credits to qualify.

At the time of his retirement, Beaver sought to qualify for "special retirement." Although Beaver had been employed by the Township for only twenty-two years, to qualify he purchased credit based on his four years of service in the United States Navy (from 1962 to 1966) by paying into an annuity savings fund. Therefore, upon his retirement, Beaver had completed twenty-five years of "creditable service," but not twenty-five years of *actual* "service" with the Township.

■ As indicated above, the Agreement between the PBA and the Township offered continued health benefits "*to all employees who have retired.*" That contract, therefore, did not comply with the terms of *N.J.S.A.* 40A:10–23, because it permitted (in fact, required) benefits to be paid to employees who had not completed

---

[3] "Section 4" provided: "Only service as a policeman or fireman paid for by an employer, which was rendered by a member since he became a member, or, since he last became a member in case of a break in service, plus service, if any, covered by a prior service liability, shall be considered as creditable service for the purposes of this act ..." *N.J.S.A.* 43:16A–4 (1988).

twenty-five years of "service," and therefore was *ultra vires*. Therefore, we must now consider whether the Agreement was *ultra vires* in the primary or secondary sense.

In *Wood, supra,* 319 *N.J.Super.* 650, 726 *A.*2d 310, the Appellate Division considered a similar collective bargaining agreement and held that the contract was *ultra vires* in the secondary sense. In that case, the Borough of Wildwood Crest granted plaintiff post-retirement health benefits, but terminated them after three years. *Id.* at 652–53, 726 *A.*2d 310. The collective bargaining contract in *Wood* granted continued health benefits "upon retirement," yet did not require a specified term of years to be eligible for continued health benefits as required by *N.J.S.A.* 40A:10–23. *Id.* at 653–54, 726 *A.*2d 310.

The Appellate Division held that the Borough was equitably estopped from terminating the benefits, reasoning the collective bargaining contract was not *ultra vires* in the primary sense, because it was not "utterly beyond the jurisdiction" of the Borough to enter into such an agreement with the PBA. *Id.* at 660–61, 726 *A.*2d 310. At most, the *Wood* Court considered the Borough's agreement to be *ultra vires* in the secondary sense since it was an "irregular exercise of a basic power." *Ibid.* According to the Appellate Division, "[t]o label the contract as *ultra vires* in the primary sense and thus void would, constitute ... a 'gross injustice.'" *Id.* at 661, 726 *A.*2d 310 (quoting *Juliano v. Borough of Ocean Gate,* 214 *N.J.Super.* 503, 510, 520 *A.*2d 418 (Law Div. 1986)). We follow the reasoning of *Wood* and hold that the Township's extension of benefits to Beaver is *ultra vires* in the secondary sense because the Agreement was merely an "irregular exercise of a basic power" of the Township. Support for that conclusion is found in the amended version of *N.J.S.A.* 40A:10–23 that now authorizes municipal employers discretion to grant benefits to retiring employees in Beaver's position.

## IV.

■ Because the Agreement is *ultra vires* in the secondary sense, we apply the principle of equitable estoppel, and find that

the Township is estopped from terminating Beaver's health benefits. As in *Wood,* Beaver established that prior to his retirement he was repeatedly assured by Township officials that he would continue to enjoy post-retirement medical benefits and that, in reliance on those assurances, he retired while still in his early forties, with young children to support and only two and a half years shy of twenty-five years of actual service with the Township. Although Loigman contends that there is no factual basis to support those representations, the Township has never denied making such repeated assurances. Moreover, the Township in good faith granted Beaver's benefits for ten years before being prodded by Loigman to terminate them.

When weighing "the reliance factor," we find that equitable considerations prohibit the Township from terminating Beaver's post-retirement health benefits. But for the Township's representations to Beaver that his health benefits would be continued after retirement, Beaver could have waited and retired two and a half years later to guarantee those benefits. Second, the potential cost of monthly COBRA payments would impose a substantial burden on Beaver's resources. Third, Beaver relied in good faith on the assurances that health insurance benefits would be a part of his retirement package. Finally, after ten years of retirement, Beaver is effectively foreclosed from alternative employment opportunities that would offer him free health benefits for his family.

"[T]he rights of persons innocently entering into municipal contracts ha[ve] to be considered in order to avoid manifest injustice and legal wrong." *Wood, supra,* 319 *N.J.Super.* at 657, 726 *A.2d* 310 (citing *Summer Cottagers' Ass'n of Cape May,* 19 *N.J.* at 505–06, 117 *A.2d* 585). A municipality will be equitably estopped from terminating benefits that were previously approved and relied upon by the recipient. *See Miller v. Bd. of Trustees of the Teachers' Pension and Annuity Fund,* 179 *N.J.Super.* 473, 479, 432 *A.2d* 560 (App.Div.), *certif. denied,* 88 *N.J.* 502, 443 *A.2d* 714 (1981) (reasoning that doctrine of equitable estoppel "is intended to prevent a party's disavowal of prior conduct if such

repudiation would frustrate the demands of justice and good conscience." (citations omitted)). The Township approved Beaver's retirement package and should be equitably estopped from terminating his health insurance benefits after extending those benefits for more than ten years.

## V.

Although the trial court and Appellate Division both relied on *Wolfersberger, supra,* 305 *N.J.Super.* 446, 702 *A.*2d 1294, as support for their denial of Beaver's medical expenses, that reliance is misplaced. In 1993, Wolfersberger retired from the Point Pleasant Beach police force after twenty-three years of actual service. *Id.* at 448, 702 *A.*2d 1294. Wolfersberger purchased credit for his time served in the United States Armed Forces to "make up the difference between what he had actually contributed to the annuity fund and what he would have contributed if he had worked the full twenty-five years" pursuant to *N.J.S.A.* 43:16A–11.11. *Ibid.* The collective bargaining agreement between Point Pleasant and the PBA stated that

> any officer represented by this unit who has completed twenty-five (25) years of service shall remain within the Borough Medical Plan at husband and wife coverage at no expense to the employee upon retirement from the employ of Point Pleasant Borough.
>
> *[Ibid.]*

After Wolfersberger applied for continued health benefits, the Borough refused to pay for his post-retirement health insurance, arguing that for the purpose of its collective bargaining agreement and *N.J.S.A.* 40A:10–23, "service" means only actual service. *Id.* at 449, 702 *A.*2d 1294.

The Appellate Division upheld the denial of benefits to Wolfersberger concluding that "service" under *N.J.S.A.* 40A:10–23 cannot be construed to mean the same as "creditable service" under *N.J.S.A.* 43:16A–1, because of "the significant differences in the language, purposes, and legislative history of the two statutes." *Ibid.* The court held that the Borough properly denied Wolfersberger's benefits pursuant to the discretion granted by *N.J.S.A.*

40A:10–23, which states that "[t]he employer may, in its discretion, assume the entire cost of such coverage for employees." *Id.* at 450–51, 702 *A.*2d 1294 (quoting *N.J.S.A.* 40A:10–23).

This case is easily distinguishable from *Wolfersberger,* because that case lacks the critical element of reliance. Wolfersberger applied for benefits and was properly denied them. Unlike Beaver, Wolfersberger never received benefits, and therefore he could not allege a claim of reliance. Accordingly, the principle of estoppel could not be applied.

## VI.

Although it does not affect our decision that the Township is equitably estopped from denying Beaver his medical benefits, we comment briefly on Loigman's contention that the specified time period as required by *N.J.S.A.* 40A:10–23 was never adopted by "ordinance or resolution." Plaintiffs contend that when the Township Council formally ratified the collective bargaining agreement, it adopted the type of resolution required by the 1995 amendment. *N.J.S.A.* 40A:10–23 states that the period of service required under the statute be "set forth in an ordinance or resolution." In our view, the 1995 amendment to the statute reflects the legislative intention to require an ordinance or resolution that specifically adopts *N.J.S.A.* 40A:10–23.

## VII.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG and VERNIERO—7.

*Opposed*—None.