802 A.2d 529 (2002)
353 N.J. Super. 226
Thomas MALTESE, Plaintiff-Respondent,
v.
The TOWNSHIP OF NORTH BRUNSWICK, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued June 5, 2002.
Decided June 20, 2002.
*530 Aron M. Schwartz, Woodbridge, argued the cause for appellant (Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, attorneys; Mr. Schwartz, of counsel, and Peter Lambrianakos, on the brief).
Christopher P. Lenzo argued the cause for respondent (Wilentz, Goldman & Spitzer, attorneys; Frank M. Ciuffani, Woodbridge, of counsel and on the brief).
Before Judges NEWMAN, FALL and AXELRAD.
The opinion of the court was delivered by FALL, J.A.D.
In this appeal we examine a challenge to the trial court's application of the doctrine of equitable estoppel to compel a municipality to pay benefits and compensation promised to an employee lawfully appointed by the mayor under circumstances where the mayor lacked the power to bind the municipality.
Defendant, Township of North Brunswick, appeals from entry of orders on May 25, 2001, granting summary judgment in favor of plaintiff, Thomas Maltese, against the Township in the amount of $123,216.68, and denying the Township's motion for summary judgment seeking dismissal of plaintiff's complaint.
We conclude that summary judgment was improvidently granted. The promises and representations of the mayor were ultra vires. The mayor possessed the statutory authority to appoint plaintiff but lacked the power to establish his compensation and benefits. That authority was vested with the council, which had the power to provide plaintiff with the benefits promised by the mayor.
Accordingly, we hold that the focus of the equitable estoppel analysis must be upon the actions taken by the council, not the mayor. The record presented is insufficient to determine whether any actions taken by the council justify application of equitable estoppel against the municipality to compel payment of the benefits sought or otherwise manifested an intention to ratify the mayor's agreement with plaintiff. We therefore reverse the grant of summary judgment in favor of plaintiff, affirm the denial of summary judgment to the Township, and remand for further proceedings consistent with this opinion.
The facts giving rise to plaintiff's claim against the Township are not disputed. Plaintiff served as Deputy Director of Public *531 Safety for the Township of North Brunswick from June 1, 1994 through December 31, 1994, and then as Director of Public Safety from January 1, 1995 through December 31, 1999.
Plaintiff was appointed to those positions by Paul Matacera, then the Mayor of North Brunswick. Beginning in early 1994, Mayor Matacera recruited plaintiff, who at the time was Deputy Chief of Investigations with the Middlesex County Prosecutor's Office. During his recruitment of plaintiff, Mayor Matacera advised plaintiff the starting annual gross salary would be $67,500 as Deputy Director of Public Safety, and in six months he would be elevated to the position of Director of Public Safety with an annual gross salary of approximately $71,000.
Plaintiff was interested in the offered position; however his gross annual salary with the prosecutor's office was $95,000, and plaintiff was reluctant to suffer such a significant decrease in income. After additional discussions, plaintiff informed the mayor that he would accept the position if he could also be provided all of the benefits that were included in the Township's collective bargaining agreement with the North Brunswick Superior Officers' Association (SOA).
Benefits under the SOA agreement included, inter alia, longevity pay equal to 12.5% of base salary for those officers with twenty-five years' seniority, overtime, cashing-in of accrued vacation time, holiday pay, reimbursement for college education tuition and the cost of books, payment for accumulated sick days, schedule adjustment pay, and compensatory time.
The mayor represented to plaintiff that he would receive all of the benefits afforded to employees covered under the SOA collective bargaining agreement and agreed that plaintiff's longevity pay would be computed based upon twenty-five years of seniority, since plaintiff had been employed in law enforcement for twenty-five years. This agreement to cover plaintiff under the SOA agreement was not reduced to writing, nor was it voted on by the Township Council. Plaintiff contends that prior to accepting the position, he was aware that the Township's prior Director of Public Safety had been provided benefits under the SOA agreement.
Toward the end of plaintiff's employment with the Township, Mayor Matacera sent a memorandum dated August 6, 1999 to Suzanne Veitengruber, the Township's Finance Director, essentially confirming plaintiff's contentions as to his entitlement to benefits.
The salaries, wages and compensation of officials and employees of the Township, including those employees covered by collective-bargaining agreements, were set by a salary ordinance, and amendments thereto, adopted by the Township Council and approved by the mayor. The salary ordinance contains minimum and maximum salary ranges for each position, including the positions to which plaintiff was appointed. The salary ordinance also provides for longevity compensation in accordance with a schedule set forth therein. However, the terms of the Township's salary ordinance, and the benefits enumerated thereunder, are significantly different from the benefits afforded to employees covered by the SOA collective bargaining agreement.
On January 3, 1995, the Township Council passed a resolution stating:
WHEREAS, the Mayor of the Township of North Brunswick has appointed THOMAS MALTESE to the position of Director of Public Safety for a term beginning January 1, 1995 and ending December 31, 1995; and
*532 WHEREAS, The Township Council of North Brunswick does hereby consent to such appointment in accordance with the statutes of the State of New Jersey;
NOW, THEREFORE, BE IT RESOLVED on this 3rd day of January, 1995, that THOMAS MALTESE is hereby appointed to the position of Director of Public Safety for the Township of North Brunswick ending December 31, 1995.
The parties agree that the specific terms of the SOA collective bargaining agreement do not cover the position of Deputy Public Safety Director or that of Public Safety Director; that the resolution approving the Mayor's appointment did not state that the terms of the SOA agreement would be applicable to plaintiff's appointment; and that during his course of his employment with the Township, plaintiff was paid for certain benefits that were afforded to persons covered by the SOA agreement. Specifically, plaintiff "sold back" accumulated sick time to the Township in accordance with the SOA agreement. Plaintiff was also reimbursed his expenses for courses that he took at Seton Hall University towards his Master's degree. The evidence in the record discloses that plaintiff was not compensated for longevity pay during the first two years of his employment with the Township. However, when the Finance Department discovered the "error," plaintiff was offered retroactive longevity pay for those two years, but he declined. Thereafter, plaintiff received longevity pay for the remaining years, paid in accordance with the terms of the SOA collective bargaining agreement.
When a new mayor was elected, plaintiff resigned his position effective December 31, 1999. As he neared termination of his employment with the Township, plaintiff submitted a claim for payment of 590.5 unused sick-day hours; 938 unused vacation hours; 191.25 hours of unpaid compensatory time; and 836 hours of schedule-adjustment time. Those hours computed to the sum of $123,216.68 being owed plaintiff if the terms of the SOA collective bargaining agreement were applied.
The Township denied plaintiff's claim, contending his position was not covered by the SOA collective bargaining agreement, and that the Township Council's resolution confirming the Mayor's appointment did not so provide.
On April 13, 2000, plaintiff filed suit against the Township seeking enforcement of the terms of his oral contract of employment. On or about January 18, 2001, defendant moved for entry of summary judgment. The specific issue presented to the trial court was whether the doctrine of equitable estoppel was available to plaintiff to estop the Township from denying plaintiff those benefits. The motion was argued in the Law Division on March 16, 2001. In denying the Township's motion for summary judgment, the judge stated, in pertinent part:
I think everybody agrees that the issue here is whether equitable estoppel can apply. Whether it is a concept or a legal theory ... I think everyone would agree too, is if the action is deemed to be ultra vires, it's void ab initio, the Town does not have the power to do this, or if it's simply void then you can apply the doctrine of equitable estoppel. I look at whether something is ultra vires perhaps in a very simplistic way. Did the Town have the statutory authority to approve the contract? If it did not, if ... this was something that the Town, even if it was presented with the contract, could not have approved it, in my view then it's ultra vires. That's not the case here. The council could have approved it if it had been presented. In *533 [my] view it was not ultra vires. So because I conclude it was not ultra vires, it's not void ab initio, and the doctrine of equitable estoppel can apply. So I am going to deny the motion, and I'm not going to tell you that it's absolutely clear one way or another, but that is the way I look at it and that is the way I'm going to rule.
On or about April 26, 2001, plaintiff moved for summary judgment, seeking an order granting him the relief requested in his complaint. Defendant cross-moved, seeking summary judgment dismissing plaintiff's complaint. The motions were argued in the Law Division on May 25, 2001. In denying defendant's motion and granting plaintiff's motion for summary judgment, the judge stated, in pertinent part:
As I understand it of the five criteria of equitable estoppel, the only issue that is in dispute is the reliance part of the equitable estoppel five part test. And I also understand that the town conceded that [plaintiff], in fact, relied. So that the only issue here is the reasonableness of his reliance.
I also understand ... that the only argument that the town is presenting to establish that [plaintiff's] reliance was not reasonable is the legal argument that, as a matter of law, he is held to the knowledge that, in fact, his contract could not be approved ... or ... carried through with absent approval by the council, and I reject that ... proposition that that, in and of itself, shows his reliance was not reasonable.
So there are no other facts, as I understand it from counsel, that the town can present to rebut the reasonableness of the reliance of [plaintiff] and there is no question in this case that it's undisputed that the mayor solicited the employment. The mayor did, in fact, propose this arrangement of benefits with [plaintiff]. That [plaintiff], in fact, left his prior employment and took a job at a lesser salary because of this inducement on the benefits. He, apparently, gave some time back. He ... took some time. He went to certain seminars that were paid for by the town, so that the benefits that he says he was entitled to, in ... fact, he utilized.
There's no dispute, which certainly would enhance the reasonableness of his position because the contract not only was offered to him and he accepted it, but it was being carried out during the course of his five and a half years as ... Police Director.
....
So there is no factual argument to be had that his reliance wasn't reasonable. Because I reject the ... argument, I will grant summary judgment in favor of [plaintiff] in that event.
On appeal, the Township presents the following arguments for our consideration:
POINT I
BY LAW, THE FORMER MAYOR LACKED THE AUTHORITY TO MAKE THE ORAL AGREEMENT PLAINTIFF SEEKS TO ENFORCE. SINCE THAT AGREEMENT WAS ULTRA VIRES AND IS THEREFORE VOID, THE TRIAL COURT SHOULD HAVE GRANTED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.
POINT II
EVEN IF ESTOPPEL WERE AVAILABLE TO PLAINTIFF, THE EVIDENCE IS UNDISPUTED THAT HE CANNOT SATISFY THE ELEMENTS OF ESTOPPEL, PARTICULARLY THE ELEMENT OF REASONABLE RELIANCE. ACCORDINGLY, THE TRIAL COURT *534 ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF AND DENYING THE TOWNSHIP'S CROSS MOTION FOR SUMMARY JUDGMENT.

I
The Township argues that the agreement between plaintiff and the mayor was ultra vires, and therefore void and unenforceable. As a result, the Township contends the doctrine of equitable estoppel is inapplicable. Moreover, the Township asserts that even if applicable, plaintiff has failed to establish the requisite elements for invoking equitable estoppel against the Township.
Resolution of the issues posed by this appeal requires our consideration of interwoven principles involving, (1) ultra vires actions by municipal officials, (2) equitable estoppel and (3) ratification. However, "in deciding whether or not to invoke equitable estoppel against a municipality, a court must focus on the nature of the action taken by the municipality[.]" Wood v. Borough of Wildwood Crest, 319 N.J.Super. 650, 656, 726 A.2d 310 (App.Div.1999).
The Township of North Brunswick is a municipality governed by a form of government authorized under the "Faulkner Act," or "Optional Municipal Charter Law," N.J.S.A. 40:69A-1 to -210 (the Act), an elective statutory scheme that permits participating municipalities to choose between four plans of government that are delineated in the Act. See McCann v. Clerk of City of Jersey City, 167 N.J. 311, 324, 771 A.2d 1123 (2001). Here, the Township elected to be governed by the Mayor-Council-Administrator Plan of government, as set forth in Article 16A of the Act, N.J.S.A. 40:69A-149.1 to -149.16.
In addition to the provisions set forth in Article 16A, Article 2 of the Act, N.J.S.A. 40:69A-26 to -30, and Article 17 thereof, N.J.S.A. 40:69A-150 to -210, "contain[] a series of mandatory provisions that are common to all of the optional plans[.]" Ibid. Thus, upon the adoption of an optional form of government under the Faulkner Act, "the municipality shall thereafter be governed by the plan adopted, by the provisions of this act common to optional plans and by all applicable provisions of general law[.]" N.J.S.A. 40:69A-26.
It is also clear that "`the Faulkner Act plainly envisages some separation of functions between the Council (the legislative body) and the Mayor (the executive).' "Casamasino v. City of Jersey City, 158 N.J. 333, 343, 730 A.2d 287 (1999) (quoting In re Shain, 92 N.J. 524, 537, 457 A.2d 828 (1983)). Moreover, "[t]hat separation of functions imposes `certain limits on the Mayor and local Council in governing the municipality.'" Ibid. (quoting Shain, supra, 92 N.J. at 538, 457 A.2d 828). As the Court noted, "[p]rinciples of separation of powers are applicable where the Legislature has specifically delegated to the mayor and to the council separate functions in the appointment of officials[.]... Where one branch of government has been specifically vested with the authority to act in a prescribed manner, neither of the other branches may usurp that authority." Ibid.
Under the Mayor-Council-Administrator plan, the municipality is governed by an elected mayor and council and an appointed municipal administrator, "and by such other officers and employees as may be duly appointed pursuant to [Article 16A], general law or ordinance." N.J.S.A. 40:69A-149.2.
N.J.S.A. 40:69A-149.5 sets forth the authority of the council and the status of the mayor, in pertinent part:

*535 The legislative power of the municipality shall be exercised by the council, except as may be otherwise provided by general law. The mayor shall preside over all meetings of the council except as herein provided, but shall not vote except to give the deciding vote in case of a tie....
[Emphasis added.]
N.J.S.A. 40:69A-149.6 delineates the duties and power of the mayor, as follows:
The executive power of the municipality shall be exercised by the mayor. He [or she] shall enforce the charter and ordinances of the municipality and all general laws applicable thereto, and shall recommend such actions to the council as he [or she] may deem in the public interest.
[Emphasis added.]
Each ordinance adopted by the council shall be submitted to the mayor, who has ten days to approve it or return it to the council with a written statement of his or her objections thereto. The council can override the mayor's veto by a vote of at least two-thirds of its members. N.J.S.A. 40:69A-149.7.
The mayor shall nominate and, with the advice and consent of the council, appoint a municipal administrator, an assessor, a tax collector, an attorney, a clerk, a treasurer "and such other officers as may be provided by ordinance." N.J.S.A. 40:69A-149.8a. The plan also provides for the creation and governance of the various departments in the municipality, as follows:
b. The municipality may provide by ordinance for the establishment of municipal departments, not to exceed six in number. Each department shall be headed by a director, who shall be appointed by the mayor with the advice and consent of the council. Each department head shall serve during the term of office of the mayor appointing him [or her], and until the appointment and qualification of a successor. The mayor may remove any department head upon written notice to the council. The council may remove department heads for cause after hearing.
The municipal administrator shall supervise the administration of each of the departments established by ordinance. For this purpose, the municipal administrator shall have the power to investigate the organization and operations of any department, to prescribe standards and rules of administration practice and procedure, and to consult with the heads of departments.
[N.J.S.A. 40:69A-149.8b (emphasis added).]
Under the Mayor-Council-Administrator form of government, "[t]he council shall prepare the annual budget with the assistance of the municipal administrator and the treasurer[,]" N.J.S.A. 40:69A-149.12, and "[n]o municipal funds shall be disbursed except pursuant to and within the limits of appropriations made in accordance with law." N.J.S.A. 40:69A-149.14.
Notably, N.J.S.A. 40:69A-180(c), a provision applicable to all optional plans under the Act, provides:
(c) The council at its organization meeting shall elect a president of the council from among the members thereof and the president shall preside at its meetings and perform such other duties as the council may prescribe. In the absence of the president, the council shall elect a temporary presiding officer. The compensation of the mayor, council members and department heads shall be fixed by the council immediately after its organization.

[Emphasis added.]
*536 The statutory scheme in a Mayor-Council-Administrator form of government is clear. In the exercise of executive authority, the mayor appoints officials, including department heads, subject to the advice and consent of the council. The council, in the exercise of its legislative authority, by ordinance, creates the various department heads and sets their compensation. The mayor has the authority to veto any such ordinance, subject to the override authority of the council.
Except in the context of his or her veto power, the mayor has no authority to set the salary or compensation of any department head. In that sense, any promises, representations or agreements by the mayor to a department head with respect to his or her salary, compensation or benefits, are ultra vires. Conversely, the council, on behalf of the municipality, has the authority to so act. See Liebeskind v. Mayor and Mun. Council of Bayonne, 265 N.J.Super. 389, 396-98, 627 A.2d 677 (App. Div.1993) (municipal council had statutory authority to enact ordinance authorizing six-month retroactive salary increases for departmental directors at a meeting other than quadrennial organizational meeting); City of Camden v. Dicks, 135 N.J.Super. 559, 561-62, 343 A.2d 808 (Law Div.1975) (statutory grant of authority of a Faulkner Act municipality to grant compensation to its employees was broad enough to include payment for unused sick leave in the form of additional compensation upon retirement). Therefore, in that sense, permitting plaintiff to receive the same benefits afforded to employees covered by the SOA collective bargaining agreement is not ultra vires, in that the council could elect to do so.
Therefore, we conclude that Mayor Matacera was without authority to bind the municipality when he promised plaintiff he would receive the benefits contained in the SOA agreement. However, the council did have the authority to act and ratify the terms of the mayor's agreement with plaintiff. Accordingly, when considering the application of equitable principles, the focus must be directed on any actions taken by the council with respect to the benefits promised.
N.J.S.A. 40A:9-10 specifically requires that "the governing body of the municipality shall fix the amount of salary, wages or other compensation to be paid to ... municipal officers and employees[.]" Moreover, the salaries, wages or compensation paid to officers and employees of municipalities must be established by ordinance. N.J.S.A. 40A:9-165; see Liebeskind, supra, 265 N.J.Super. at 397-98, 627 A.2d 677 (making clear that the provisions of N.J.S.A. 40A:9-165 are applicable to Faulkner Act municipalities).
The Local Budget Law, N.J.S.A. 40A:4-1 to -88 establishes the procedures required for adoption of a municipal budget, determining the amounts to be raised by taxation and appropriation of budgeted funds for specific purposes. It is clear that no public official or entity may expend any public funds nor incur any liability that involves the payment to plaintiff of public funds for which no appropriation is provided. N.J.S.A. 40A:4-57; N.J.S.A. 40:69A-149.14.
The Local Fiscal Affairs Law, N.J.S.A. 40A:5-1 to -47 prescribes procedures that municipalities must follow in paying appropriated public funds to vendors, employees or other claimants. N.J.S.A. 40A:5-16 establishes the general requirement that the governing body shall not pay public funds unless the claimant presents a certified bill detailing the nature of the claim and a certification by a duly designated officer or employee stating that the goods have been received or the services have been rendered to the municipality.
*537 N.J.S.A. 40A:5-17a requires that "[t]he governing body shall approve or disapprove all claims." A municipality is authorized to adopt an ordinance that establishes the precise procedures for certifying and approving claims for payment. See N.J.S.A. 40A:5-17a(1) to -17a(4).
As to salaries, compensation and other benefits, N.J.S.A. 40A:5-19 provides, as follows:
The governing body of any local unit may provide by ordinance for the manner in which and the time at which salaries, wages or other compensation for services shall be paid, and prescribe the form and manner in which checks upon the treasury shall be drawn and signed for that purpose.
The local unit may, by resolution, provide for the bi-weekly payment of the salaries, wages and compensation of officers and employees, both elective and appointive.
The record does not contain copies of any ordinances adopted by the Township respecting the process for review, certification and approval of claims for payment, nor does it contain the precise resolutions reflecting authorization for any payments made to plaintiff for the buy-back of sick days, reimbursement for tuition, books or other education-related expenses, longevity payments, or any other items that plaintiff contends he was compensated for in accordance with the terms of the SOA collective bargaining agreement.
It is clear that the mayor's representations to plaintiff concerning the applicability of the provisions of the SOA collective bargaining agreement to plaintiff's employment as Public Safety Director were ultra vires and, without more, are not binding upon the Township. The statutory procedures were simply not followed. Only action by the council could afford plaintiff the benefits and compensation set forth in the SOA collective bargaining agreement. Otherwise, the manner and amount of compensation for the positions accepted by plaintiff were clearly "legislated" by the council in the existing salary ordinance.[1]

II
We now turn to the issue of whether the Township can be equitably estopped from denying plaintiff the benefits under the SOA collective bargaining agreement. A closely-related issue is whether he may receive those benefits by application of the equitable doctrine of ratification.
Principles applicable to the doctrine of equitable estoppel[2] were outlined by our Supreme Court in Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-04, 117 A.2d 585 (1955), and warrant quoting here at length:
The essential principle of the policy of estoppel here invoked is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct.... An estoppel by matter in pais may arise by silence or omission where one is under a duty to speak or act.... It has to do with the inducement of conduct to action or nonaction. One's act or acceptance *538 may close his mouth to allege or prove the truth.... The doing or forbearing to do an act induced by the conduct of another may work an estoppel to avoid wrong or injury ensuing from reasonable reliance upon such conduct. The repudiation of one's act done or position assumed is not permissible where that course would work injustice to another who, having the right to do so, has relied thereon.... An estoppel arises "where a man is concluded and forbidden by law to speak against his own act or deed; yea, even though it is to say the truth." Termes de la Ley, title Estoppel.

There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are ultra vires in the primary sense and void; the latter, ultra vires only in the secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice.... But there cannot be such relaxation of the conditions laid down in the grant of the power as to defeat the public policy intended to be served. The question is essentially one of legislative intention. Are the conditions made prerequisite to the very existence of the powera limitation of the power itself?
In Bauer v. City of Newark, 7 N.J. 426, 81 A.2d 727 (1951), we noted the distinction between an utterly void contractual undertaking for want of municipal capacity no matter what the circumstances and a contract within the general powers of the municipality but void and unenforceable for lack of an appropriation, or for nonconformance with a statutory conditions precedent, "as distinguished from an ultra vires contract merely voidable for want of authority or for an irregularity in the exercise of the contractual power"; and the holding that the purported contract was rendered null and void by the statute, and could be adopted or ratified only by full compliance with the statutory prerequisites to contractual liability in the first instance; the law would not imply a promise to pay when that course would flout an explicit statutory mandate; and, by the same token, there could be no recovery on a quantum meruit. The ruling consideration there was that the statutory policy may not be set at naught by indirection.
....
While it was the original rule that a contract ultra vires was void ab initio and could not be validated by performance or by application of the law of estoppel, the rights of persons innocently entering into ultra vires contracts with private corporations came to be recognized in the refusal to apply the doctrine[.] ... But the opposing public policy cannot be disregarded. The limitations of the power are presumed to be commonly known.
[Other internal citations omitted.]
In Summer Cottagers' Ass'n, supra, a group of local taxpayers challenged the validity of the sale and conveyance to the defendants of real property owned by the municipality at a private sale based upon noncompliance with the statutory requirement that the municipality sell to the highest bidder after public advertisement. 19 N.J. at 497-98, 117 A.2d 585. After the private sale, the defendants developed the property. Id. at 506, 117 A.2d 585. The Court concluded that the plaintiffs, who failed to protest against or take any action to vacate the sale until development of the property, were estopped from seeking an order declaring the sale void. Ibid.
*539 In Bauer, supra, the mayor and Newark's corporate counsel engaged plaintiff as an expert economist for the sum of $15,000 to act on behalf of the City in a telephone rate case then pending before the Board of Public Utilities. 7 N.J. at 429, 81 A.2d 727. The plaintiff was paid a $5,000 retainer and completed his work. Ibid. The City refused to pay the balance due on the contract, contending "that the mayor and the corporation counsel, either singly or together, did not have authority to obligate the municipality to pay for such service, and there was no ratification of the purported employment." Id. at 429-30, 81 A.2d 727. Specifically, there was no appropriation authorized by the City in its budget or by ordinance to cover the expenditure. Id. at 432-34, 81 A.2d 727. Our Supreme Court addressed the issue, as follows:
Generally, an ultra vires contract, being void, is not subject to ratification, express or implied.... On principle a void contract is not validated by performance. Yet there is a distinction between a purported contract which the municipality is utterly without capacity to make under any circumstances and a contract within the general powers of the corporation but void and unenforceable for lack of an appropriation, ... or for non-conformance with a statutory condition precedent, as distinguished from an ultra vires contract merely voidable for want of authority or for an irregularity in the exercise of the contractual power....
[Bauer v. City of Newark, 7 N.J. 426, 434, 81 A.2d 727 (1951) (internal citations omitted).]
In affirming dismissal of the plaintiff's action for payment under his contract with the mayor and corporation counsel, the Court ruled that the distinction between an ultra vires contract voidable for want or authority or an irregularity in the exercise of the contractual power (ultra vires in the secondary sense), and a purported contract which the municipality is utterly without the capacity to make (ultra vires in the primary sense),
has no significance here. The purported contract is rendered null and void by the statute; and the statutory policy may not be set at naught by indirection. The particular ultra vires act can be adopted or ratified only by full compliance with the statutory prerequisites to contractual liability in the first instance.... Where an express promise to pay for a service to be performed is ultra vires and void for failure of conformance with statutory restrictions upon the exercise of the contractual power, an implied promise to pay cannot arise from the acceptance of the service.... The law will not imply a promise to pay when that course would flout an explicit statutory mandate; and, by the same token, there can be no recovery on a quantum meruit. The law will not thus permit the annulment of the statutory limitation upon the contractual authority of municipalities. Here, it is expressly provided by R.S. 40:2-29,[3] cited supra, that "no moneys shall be paid" on a purported contract thereby made void. And it goes without saying that, in keeping with the general law of contracts, the valid provisions of a contract which do not in their entirety satisfy the statutory policy are enforceable, if severable.
[Bauer, supra, 7 N.J. at 435, 81 A.2d 727 (internal citations omitted).]
*540 In Vogt v. Borough of Belmar, 14 N.J. 195, 101 A.2d 849 (1954), the Court ruled that the municipality was estopped from denying workers' compensation benefits to a minor elected to junior membership in the municipality's fire company when the minor, acting under the direction of superior officers, was injured while helping to extinguish a fire. At the time of the accident, the minor plaintiff had not as yet been approved as a junior fireman by formal resolution of the governing body, as required by local ordinance, even though he had been so approved by the volunteer fire company. Id. at 201, 101 A.2d 849. Subsequent to the accident, the municipality adopted a resolution confirming the election of the plaintiff to junior membership. Ibid. In applying equitable estoppel against the municipality, the Court stated, in pertinent part:
It would be contrary to the plainest principles of justice if the municipality, having accepted active public fire service from "junior" firemen under circumstances indicating a waiver of any local law to the contrary, were now permitted to invoke the formal requisites of local law to defeat appellant's claim for compensation for the injury suffered in the rendition of that hazardous service. In analogy to estoppel relating to contracts, a municipality may be estopped to deny the exercise of its consensual authority under the conditions here obtaining ...
....
Here, the acceptance of public fire service tendered by persons within the "junior" class was within the corporate power; the doctrine of ultra vires is not involved. A different question would be presented were such requirements created by statute.... The application here of the doctrine of waiver and estoppel serves the statutory policy, for, in the words of the statute, the design was to place on the municipality the burden of compensation and insurance coverage to that end for "each and every active volunteer fireman doing public fire duty."
In respect of matters within the realm of its general power and authority, a municipal corporation is ordinarily subject to the doctrine of estoppel in pais to serve the demands of right reason and justice, at least where the invocation of the rule would not hinder or prejudice essential governmental functions, and especially where the irregularity or deficiency is largely technical or formal and not of the jurisdiction.... While not applied as freely against the public as in the case of private individuals, the doctrine of estoppel may be invoked against a municipality to prevent manifest wrong and injustice....
....
Here, there was not a contract of hire in the technical sense; there was no provision for compensation; the relationship was rather a gratuitous consensual undertaking to perform "public fire duty" as a member of a volunteer fire company, under the "control or supervision" of the municipal governing body....
....
But however the relationship here be termed in the law, and whatever its legal consequences in other directions, it is yet one that by express statutory provision subjects the municipality to the peremptory duty of compensation under the Workmen's Compensation Act....
The local authority, by a long-continued course of conduct, imparted character and meaning to the relationship that fulfills the statutory condition; and it will not be heard to disavow the obligation now that the appellant volunteer has suffered injury in the performance of the public fire duty which he assumed in good faith with its acquiescence under *541 the established practice. The beneficent policy of compensation provision is not to be whittled away by over-nice distinctions and technical formality unrelated to the substance of the right.
[Id. at 204-08, 101 A.2d 849 (internal citations omitted).]
In Middletown Policemen's Benevolent Ass'n v. Township of Middletown, 162 N.J. 361, 744 A.2d 649 (2000), the Court held that the municipality was estopped from terminating a retired police officer's health insurance benefits. The officer was repeatedly advised by municipal officials that upon his retirement he would be entitled to continued health insurance benefits. Id. at 364, 744 A.2d 649. Upon retirement, the municipality continued to provide him health benefits for nearly ten years. Id. at 364-65, 744 A.2d 649. After receiving a complaint from a citizen it was determined that the officer did not have twenty-five years service with the municipality, as required by N.J.S.A. 40A:10-23, in order to qualify for continued benefits. Id. at 365, 744 A.2d 649.
The Court noted that "[e]quitable considerations `are relevant in assessing governmental conduct' and impose a duty on the court to invoke estoppel when the occasion arises." Id. at 367, 744 A.2d 649 (quoting Wood, supra, 319 N.J.Super. at 656, 726 A.2d 310); see Skulski v. Nolan, 68 N.J. 179, 198-99, 343 A.2d 721 (1975) (requiring the court to weigh equitable considerations in the light of the nature of the governmental action required). The Court concluded that it was within the power of the municipality to grant the officer health benefits, i.e., to do so was not ultra vires in the primary sense, and, applying equitable considerations, the municipality was estopped from terminating his health benefits. Id. at 371-72, 343 A.2d 721.
It is clear, therefore, that the doctrine of equitable estoppel is applied against a municipality only in very compelling circumstances, where the interests of justice, morality and common fairness dictate that course. County of Morris v. Fauver, 153 N.J. 80, 104, 707 A.2d 958 (1998); Palatine I v. Planning Bd. of Township of Montville, 133 N.J. 546, 560, 628 A.2d 321 (1993); Gruber, supra, 39 N.J. at 13, 186 A.2d 489; Ranchlands, Inc. v. Township of Stafford, 305 N.J.Super. 528, 538, 702 A.2d 1325 (App.Div.1997), aff'd o.b., 156 N.J. 443, 720 A.2d 339 (1998); State v. Kouvatas, 292 N.J.Super. 417, 425, 678 A.2d 1178 (App.Div.1996). However, the doctrine is rarely invoked against a governmental entity when the estoppel would interfere with essential governmental functions. O'Malley v. Department of Energy, 109 N.J. 309, 316, 537 A.2d 647 (1987); Bonaventure Int'l, Inc. v. Borough of Spring Lake, 350 N.J.Super. 420, 436, 795 A.2d 895 (App.Div.2002); Ranchlands, supra, 305 N.J.Super. at 538, 702 A.2d 1325.
Additionally, we note that in the Summer Cottagers' Ass'n, Vogt, Middletown Policemen's Benevolent Ass'n, Wood, and Kouvatas cases, the application of equitable estoppel was based upon the actions or conduct of the specific municipality entity having the authority to act, under circumstances where that entity failed to act properly.
Here, the trial court primarily analyzed the estoppel argument based upon the conduct of the public official who did not have the authority to actthe mayor. That was not the appropriate approach to the estoppel analysis. Rather, the focus must be on the conduct of the person or entity who had the authority to acthere, the council. Under these circumstances, it is only action by the council that could form *542 the basis for application of the doctrine of equitable estoppel.
Where there is sufficient evidence that the municipality has affirmed the unauthorized act of an employee or officer, the doctrine of implied ratification can be invoked to enforce the agreement. Johnson v. Hospital Serv. Plan of New Jersey, 25 N.J. 134, 140-41, 135 A.2d 483 (1957). In Casamasino, supra, 158 N.J. at 346, 730 A.2d 287, the Court noted that "[t]he analysis of ratification of employment relations has paralleled the analysis of contract ratification." Citing with approval to Grimes v. City of East Orange, 288 N.J.Super. 275, 672 A.2d 239 (App.Div. 1996), the Court outlined the required ratification analysis, as follows:
First, the Bauer test must be applied to decide whether the act or appointment was ultra vires or intra vires. An act or appointment is ultra vires if the "municipality [was] utterly without capacity" to perform the act or make the appointment. Bauer, supra, 7 N.J. at 434, 81 A.2d 727. Such an act or appointment is void and may not be ratified. Ibid. In contrast, an intra vires act or appointment is one that is "voidable for want of authority" and may be ratified. Ibid.; Grimes, supra, 288 N.J.Super. at 279, 672 A.2d 239. This general rule has been recognized throughout the country. Second, Grimes requires that when the act or appointment involves statutory conditions precedent, ratification must be made with the same formalities required for the original exercise of the power, meaning in accordance with the statutory procedures required for the original act....
[Casamasino, supra, 158 N.J. at 347, 730 A.2d 287 (other citations omitted).]
Here, there was formal action taken by the Council confirming Mayor Matacera's appointment of plaintiff as the Director of Public Safety. At the outset of his appointment, there was no overt action taken by the council that established plaintiff's compensation and his benefits package as being anything other than that contained in the Township's then-existing salary ordinance.
Ratification by a municipality, express or implied, must be demonstrated by actions that fully comply with all the statutory precedents. Gonzalez v. Board of Educ. of Elizabeth Sch. Dist., 325 N.J.Super. 244, 256, 738 A.2d 974 (App. Div.1999) (citing to Casamasino, supra, 158 N.J. at 345, 730 A.2d 287). "[I]f the difficulty is an irregularity in the exercise of a power the municipality does have and the Legislature had not decreed the consequences of the irregularity, our cases seek a just result." 405 Monroe Co. v. City of Asbury Park, 40 N.J. 457, 463, 193 A.2d 115 (1963). Additionally, "[a]lthough ratification may be implied by conduct, before ratification may estop a claim it must be shown that the officials acted with full knowledge of the material facts, either actually or as a matter of law." Board of Educ. of Asbury Park v. Hoek, 38 N.J. 213, 241, 183 A.2d 633 (1962); see also Thermo Contracting Corp. v. Bank of New Jersey, 69 N.J. 352, 361, 354 A.2d 291 (1976) (noting that although ratification may be express or implied, it requires an intent to ratify plus full knowledge of all material facts; that intent may be inferred by conduct).
The proper inquiry here is whether any conduct by the council, the entity that had the authority to act and provide plaintiff the benefits as promised by the mayor, manifested an intention to ratify or affirm the unauthorized actions of the mayor. Johnson, supra, 25 N.J. at 140-41, 135 A.2d 483. "Any conduct on the part of the municipality reasonably *543 evidencing approval of the unauthorized transaction will suffice." Id. at 141, 135 A.2d 483. The form of that action must be by resolution or ordinance[4] and with full knowledge of all the facts and with the intent to grant plaintiff the benefits promised.
The record as constituted is insufficient to permit the required analysis. The procedures and documentation that led to plaintiff being paid longevity amounts, the buy-back of sick days, and educational reimbursements, all ostensibly in accordance with the SOA collective bargaining agreement, are not evident; nor is the role or awareness of the council in those payments. The circumstances and past practices vis-a-vis benefits afforded to previous Directors of Public Safety under the SOA collective bargaining agreement, which may go to the issue of intent, knowledge and awareness, is also not clear. The extent to which the prior Director of Public Safety received those benefits, and the procedures or actions that led to that occurring are also not disclosed by this record. Additional discovery is necessary; granting summary judgment on this record was premature. Whether the doctrines of equitable estoppel or ratification should be applied is fact-sensitive, and application of the principles we have outlined cannot be determined on this record. We emphasize, however, that application of these principles against a municipality must be based upon compelling circumstances and must not interfere with essential governmental functions.
The order granting summary judgment in favor of plaintiff is reversed; the order denying the Township's motion for summary judgment is affirmed; the matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The adopted salary ordinance contained in the record contains authorized ranges of salary, as well as general officer and employee salary information. The record does not contain, however, the salary resolution(s) contemplated by N.J.S.A. 40A:5-19 that presumptively contain the legislative expression by the council respecting plaintiff's specific salary.
[2] The doctrine of equitable estoppel was previously cited as estoppel in pais. The terms are synonymous.
[3] R.S. 40:2-29 has been repealed and is superseded by N.J.S.A. 40A:4-57, discussed infra.
[4] Municipalities must establish salary, wages or other compensation by the formality of an enabling ordinance. N.J.S.A. 40A:9-165. However, specific salaries or benefits paid or the terms of employment contracts or negotiated agreements may be approved by resolution. See Shalita v. Township of Washington, 270 N.J.Super. 84, 89, 636 A.2d 568 (App.Div. 1994).