**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0321-17T4

STEVE JONES,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

     Respondent-Respondent.

_____

Submitted[1] October 7, 2019 – Decided October 18, 2019

Before Judges Fasciale and Moynihan.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-86267.

Jacobs & Barbone, PA, attorneys for appellant (Louis Michael Barbone and Joel S. Juffe, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney

---

[1] The parties waived oral argument.

General, of counsel; Thomas R. Hower, Deputy Attorney General, on the brief).

PER CURIAM

Steve Jones (petitioner) appeals from an August 15, 2017 final agency decision by the Board of Trustees, Police and Firemen's Retirement System (the Board). The Board modified an initial determination by an administrative law judge (ALJ), imposed a partial forfeiture of service and salary, and determined that petitioner was ineligible for accidental disability retirement benefits. We affirm.

Petitioner served as a police officer in the City of Millville (the City) from 1988 through 2011. During 2005 to 2006, he attended three work-related conferences, where, per Millville Police Department (MPD) policy, he was entitled to meal expense reimbursement. Upon return, he submitted store-bought expense reimbursement paperwork rather than the requisite actual restaurant receipts. An internal investigation into the reimbursement requests was conducted, and investigators interviewed petitioner. On March 18, 2008, the MPD served petitioner with a Preliminary Notice of Disciplinary Action (the 2008 PNDA), which charged him with conduct unbecoming a police officer, conduct unbecoming a public employee, and violations of MPD rules and policies, based on the expense reimbursement submissions.

On July 25, 2011, the MPD served petitioner with another PNDA (the 2011 PNDA), which alleged multiple administrative charges and rule violations relating to false statements petitioner supposedly made in 2010. After a hearing, an ALJ found that petitioner committed conduct unbecoming a police officer under N.J.A.C. 4A:2-2.3(a)(6), and violated other department rules and regulations for untruthfulness. The petitioner was suspended for three months, he appealed, and thereafter, in an unpublished opinion, we affirmed. Jones v. City of Millville Police Dep't, No. A-000093-10 (App. Div. Nov. 15, 2011).

On December 27, 2011, petitioner applied for accidental disability retirement benefits, due to work-related injuries. On August 22, 2012, the Board analyzed the eleven factors for pension forfeiture set forth in Uricoli v. Board of Trustees, Police & Firemen's Retirement System, 91 N.J. 62, 77-78 (1982), and codified in N.J.S.A. 43:1-3, and it denied petitioner's request. The Board ordered the forfeiture of petitioner's entire service and salary credit, and it disqualified him from applying for accidental disability retirement benefits. The Board considered the 2011 PNDA and explained that the PNDA raised questions about whether petitioner's service as a police officer was dishonorable.

The City and petitioner entered into a Settlement Agreement and General Release (the Agreement) on June 21, 2012, under which petitioner resigned his

employment effective December 1, 2011, settled his Civil Complaint against the City, and agreed to waive any right to return to work for the City in the future.

Petitioner appealed the Board's determination, and the matter was transmitted to the Office of Administrative Law (OAL) as a contested case. On May 10, 2017, an ALJ (the ALJ) recommended no forfeiture of petitioner's salary and service credit. The ALJ also found that petitioner could apply for accidental disability retirement benefits.

In its final administrative decision, the Board rejected the ALJ's conclusion that no forfeiture was warranted, and it repudiated the ALJ's weighing of Uricoli factors seven, eight, and nine. Instead, the Board adopted a partial forfeiture of service and salary from November 28, 2007 (when petitioner was first untruthful to investigators) through June 30, 2011 (the last date of petitioner's pension contributions), in accordance with N.J.S.A. 43:1-3(b) and N.J.A.C. 17:1-6.1(c). The Board also determined that petitioner was ineligible to apply for accidental disability retirement benefits because, by agreeing to waive any right to future employment, petitioner could not comply with N.J.S.A. 43:16A-8(2), which is a mandatory return-to-work provision if the petitioner's disability diminishes.

Petitioner argues three points on appeal:

POINT I
THE ESTABLISHED REASONABLE CONDUCT OF [PETITIONER] CONCERNING HIS MEAL REIMBURSEMENT RECEIPTS (1) DID NOT MEET THE DEFINITION OF "MORAL TURPITUDE"; (2) WAS OTHERWISE NOT SUBSTANTIAL OR GRAVE AND WAS ISOLATED; [AND] (3) . . . DID NOT RELATE TO HIS PUBLIC DUTY AS A POLICE OFFICER.

POINT II
THE BOARD ERRED IN CONSIDERING THE 2011 DISCIPLINARY CHARGES AGAINST [PETITIONER] THAT WERE EXPLICITLY RENDERED WITHDRAWN AND MOOT IN THE BLACK LETTER OF A SETTLEMENT AGREEMENT BETWEEN [PETITIONER] AND [THE CITY].

POINT III
THE BOARD ERRED IN DETERMINING [PETITIONER'S] APPLICATION TO RECEIVE ACCIDENTAL DISABILITY RETIREMENT BENEFITS IS UNWORKABLE AGAINST THE STATUTORY FRAMEWORK BECAUSE CREDIBLE EVIDENCE SHOWS [PETITIONER'S] APPLICATION WOULD NOT BE AFFECTED BY THE SETTLEMENT; THUS, EQUITABLE ESTOPPEL APPLIES.

Our review of the Board's decision is very limited. Caminiti v. Bd. of Trs., Police & Firemen's Ret. Sys., 394 N.J. Super. 478, 480 (App. Div. 2007). Generally, we may overturn the decision if it is unsupported by sufficient

5

credible evidence in the record, ibid., but such an inquiry is unnecessary here because the facts are undisputed.  We are not bound by an agency's interpretation of a statute or a strictly legal issue; we review such questions de novo.  See Ardan v. Bd. of Review, 231 N.J. 589, 604 (2018); see also Mount v. Bd. of Trs. Police & Firemen's Ret. Sys., 233 N.J. 402, 418-19 (2018).  Ordinarily we defer to an agency's interpretation of a statute unless it is "plainly unreasonable," contrary to the statutory language, or "subversive of the Legislature's intent." N.J. Tpk. Auth. v. AFSCME, Council 73, 150 N.J. 331, 352 (1997).

I.

Public pensions for members of Police and Firemen's Retirement System (PFRS) are "expressly conditioned upon the rendering of honorable service[.]" N.J.S.A. 43:1-3(a).  Our Supreme Court has held that "a balancing approach is required in order to determine whether forfeiture is justified under all of the circumstances."  Uricoli, 91 N.J. at 77.  Uricoli's eleven-factor flexible test includes:

> (1) the employee's length of service; (2) the basis for retirement, i.e., age, service, disability, etc.; (3) the extent to which the employee's pension has vested; (4) the duties of the particular employment; (5)  the employee's public employment history and record; (6) the employee's other public employment and service; (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was

6

a single or multiple offense and whether it was continuing or isolated; (8) the relationship between the misconduct and the employee's public duties; (9) the quality of moral turpitude or the degree of guilt and culpability, including the employee's motives and reasons, personal gain, and the like; (10) the availability and adequacy of other penal sanctions; and (11) other personal circumstances relating to the employee bearing upon the justness of forfeiture.

[Id. at 78.]

Forfeiture may be total or partial—if partial, benefits are generally "calculated as if the accrual of pension rights terminated as of the date the misconduct first occurred[.]" N.J.S.A. 43:1-3(d). If the resulting pension or forfeiture would be "excessive," then the amount should be modified to "reflect[] the nature and extent of the misconduct and the years of honorable service." Ibid.; see also N.J.A.C. 17:1-6.1(c).

Here, both the Board and the ALJ analyzed all eleven factors. Factor seven states, "the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated[.]" Uricoli, 91 N.J. at 78. And factor eight states, "the relationship between the misconduct and the employee's public duties[.]" Ibid. The ALJ wrote that, "although untruthful, . . . petitioner's

misconduct was not substantial or grave [and] was not continuing in nature, but isolated to the internal investigation."

But the Board found that petitioner had a history of being untruthful beginning November 28, 2007—regarding the receipts from 2005 and 2006—and continuing to 2011; thus, it was not "isolated," but rather substantial and ongoing.  As to factor eight, petitioner argues that the meal reimbursement receipts "had absolutely nothing to do with [his] duties as a police officer." However, the Board determined that there was a direct relationship between the misconduct and petitioner's police duties because he repeatedly lied about the receipts and, as an officer, he was held to a high degree of responsibility to respect and uphold the laws.

Factor nine considers "the quality of moral turpitude or the degree of guilt and culpability, including the employee's motives and reasons, personal gain, and the like[.]"  Ibid.  "Moral turpitude" is defined as "[c]onduct that is contrary to justice, honesty, or morality; esp., an act that demonstrates depravity." Black's Law Dictionary 515 (11th ed. 2019).  We previously defined "moral turpitude" as an "act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, to society in general, contrary to the accepted and customary rule of right and duty between man and man[.]"  State

Bd. of Med. Exam'rs v. Weiner, 68 N.J. Super. 468, 483 (App. Div. 1961) (internal citations and quotation marks omitted). We later stated that, "[g]uidelines for a determination with respect to moral turpitude, after essential findings of fact, may be found in our opinion in [Weiner] and the several cases and other authorities cited therein." Gauli v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. Super. 480, 483 (App. Div. 1976). We added that, "[p]erhaps its real lesson is to be found in its acknowledgment of 'the elasticity of the phrase and its necessarily adaptive character,' and in its suggestion that its application be 'reflective at all times of the common moral sense prevailing throughout the community.'" Ibid. (quoting Weiner, 68 N.J. Super. at 484).

Here, the Board disagreed with the ALJ, who adopted the Weiner definition of moral turpitude. The ALJ determined that petitioner's conduct regarding the meal reimbursement receipts did not rise to the level of being baseless, vile, or depraved. But the Board, in its discretion, concluded that petitioner lied for personal gain and that his degrees of responsibility and culpability were high. Thus, the Board relinquished petitioner's pension from the date that he was first untruthful. The Board explained that petitioner received a three-month suspension for the 2005 and 2006 untruthful incidents, and it noted his record of progressive discipline.

Pensions are viewed "primarily as deferred compensation, which should not be completely forfeited except in the most egregious cases." Uricoli, 91 N.J. at 80-81. The Board argues that petitioner's reliance on total forfeiture cases, is "unavailing," as this case involves partial forfeiture. We agree and conclude that here, the Board properly analyzed the eleven factors to find that partial forfeiture of petitioner's pension was warranted.

## II.

N.J.S.A. 43:1-3(b) states:

> The board of trustees of any State or locally-administered pension fund or retirement system created under the laws of this State is authorized to order the forfeiture of all or part of the earned service credit or pension or retirement benefit of any member of the fund or system for misconduct occurring during the member's public service which renders the member's service or part thereof dishonorable and to implement any pension forfeiture ordered by a court pursuant to section 2 of [N.J.S.A. 43:1-3.1].

Here, the Board explained:

> The Legislature has empowered the Board to look at all misconduct, including charges like the 2011 PNDA. Even when civil or criminal charges or actions for misconduct are dismissed in exchange for a resignation in good standing, the Board is specifically authorized to review the charges for honorable service. N.J.S.A. 43:1-3. The Board did, can[,] and should examine the charges contained in the 2011 PNDA.

10

The relevant part of petitioner's Agreement with the City states, "[t]he pending administrative disciplinary charges against [petitioner] shall be considered[,] dismissed[,] and withdrawn as moot, with the irrevocable waiver of return to employment as set forth herein."

Here, petitioner argues that, "[b]ecause of the mootness and withdrawal of the 2011 disciplinary charge explicit in the Agreement, it cannot be used in the Uricoli balancing test[.]"  As a result, he contends that his pension "cannot be forfeited as a result of the 2011 PNDA in light of the Agreement."  But the Board explains that "though the denial letter observed that a total forfeiture makes [petitioner] ineligible for accidental disability retirement benefits, the Board never conferred jurisdiction over whether [petitioner] could apply for accidental disability retirement benefits to the [OAL]."  N.J.S.A. 52:14B-9 details that notice of issues for a hearing in a contested case must be stated in the contested case notice.  As such, the Board stated the ALJ "acted outside of that notice by finding that [petitioner] could file for accidental disability retirement benefits."  The Board, not employers, determines eligibility for pension benefits.

11

Here, the ALJ allowed petitioner to apply for accidental disability retirement benefits, but the Board did not. Petitioner contends that the Board erred in two respects: (1) there was no jurisdiction on the issue; and (2) there is no mechanism to discontinue benefits. Petitioner claims that the first point can be "readily disposed" because "the Board only cited N.J.S.A. 52:14B-10, which does not stand for the proposition that 'the matter had to be transmitted to the OAL[.]'" As to the second point, N.J.S.A. 43:16A-8(2) states:

> Any beneficiary under the age of [fifty-five] years who has been retired on a disability retirement allowance under this act, on his request shall, or upon the request of the retirement system may, be given a medical examination and he shall submit to any examination by a physician or physicians designated by the medical board once a year for at least a period of five years following his retirement in order to determine whether or not the disability which existed at the time he was retired has vanished or has materially diminished. If the report of the medical board shall show that such beneficiary is able to perform either his former duty or any other available duty in the department which his employer is willing to assign to him, the beneficiary shall report for duty; such a beneficiary shall not suffer any loss of benefits while he awaits his restoration to active service. If the beneficiary fails to submit to any such medical examination or fails to return to duty within [ten] days after being ordered so to do, or within such further time as may be allowed by the board of trustees for valid reason, as the case may be, the pension shall be discontinued during such default.

Under the statute, an applicant for retirement disability benefits could be required to return to work if he is rendered fit for duty.

We have previously addressed the consequences of an irrevocable resignation from employment. "[E]ligibility for disability retirement benefits requires members to make a prima facie showing that they cannot work due to a disability." In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 394 (App. Div. 2018) (acknowledging the principle that eligibility for benefits depends on a prima facie showing of an inability to work due to a disability); see also Cardinale v. Bd. of Trs., Police and Firemen's Ret. Sys., 458 N.J. Super. 260, 268-69 (App. Div. 2019) (concluding that the officer was ineligible for disability benefits because he resigned irrevocably). Here, as part of the Agreement, petitioner voluntarily waived any right to return to work for the City in the future.

"Equitable estoppel applies in circumstances where 'one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct.'" Sellers v. Bd. of Trs., Police & Firemen's Ret. Sys., 399 N.J. Super. 51, 58 (App. Div. 2008) (quoting Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-04 (1955)). Equitable estoppel "is

rarely invoked against a government entity, although it will be applied in appropriate circumstances unless the application would prejudice essential governmental functions." Ibid. (internal citations and quotation marks omitted). "Principles of equitable estoppel may be applied to a government entity to 'avoid wrong or injury ensuing from reasonable reliance upon such conduct.'" Ibid. (quoting Skulski v. Nolan, 68 N.J. 179, 198 (1975)). The doctrine "'is applied against a municipality only in very compelling circumstances, where the interests of justice, morality and common fairness dictate that course.'" Ibid. (quoting Maltese v. Twp. of N. Brunswick, 353 N.J. Super. 226, 244-45 (App. Div. 2002)).

Here, petitioner argues that there "is credible evidence that [petitioner's] application for an accidental disability pension would not be affected by the settlement." Paragraph F of the Agreement states that,

> this [A]greement will be fully disclosed to the pension system and will be forwarded with the [e]mployer [c]ertification paperwork accompanying [petitioner]'s retirement application for any pension which [petitioner] sought or may seek. [The City] agrees to cooperate with the processing of any paperwork required of the [City] for the processing of any retirement application the [petitioner] has filed or may file and to provide any requested information or paperwork to the [petitioner] and/or the pension board as requested on a timely basis. The parties agree that the [City] shall not be required to take any position

regarding the nature, extent[,] or cause of any disability which [petitioner] may rely upon in support of any disability pension.

Petitioner claims that the Board erroneously relied on Paragraph E of the Agreement, which states, in part, that "regardless of any effect which it may have upon his pension or income status[,] and regardless of any statutory or regulatory provisions which may suggest to the contrary, [petitioner] shall not seek nor shall he be entitled to a return of employment with the [City]." Petitioner asserts that "[t]hroughout the Agreement, the City contemplated that [petitioner] would apply for pension benefits." But the Board was not a party to the Agreement, and, as such, was not obligated to find that the charges in the 2011 PNDA were moot and withdrawn. In addition, petitioner did not provide evidence of his own good faith reliance on the Board's prior conduct. We agree that applying equitable estoppel would "frustrate the Board's disposition of [petitioner]'s misconduct and prevent the Board from fulfilling its statutory role overseeing the accidental disability retirement process and managing the PFRS."

To the extent that we have not addressed any of the parties' remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15